# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| GRACIE DALANE DEAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 08-5092-CV-SW-NKL-SSA |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## ORDER

Plaintiff Gracie Dalane Dean ("Dean") challenges the Social Security Commissioner's ("Commissioner") denial of her application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, as amended ("the Act"). Dean has exhausted her administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). Dean argues that there is not substantial evidence in the record to support the ALJ's denial of benefits. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole, the Court denies Dean's Petition.

**I.    Factual Background**

    **A.    Testimony of Gracie Dalane Dean**

---

[1] Portions of the parties' briefs are adopted without quotation designated.

Dean testified under oath that at the time of the hearing she was thirty-eight years old, single and lived with her two youngest children. Dean stated that she cannot work due to back pain, migraines, vertigo, and depression. Dean testified that her back pain is located in her lower back and radiates into her hips and legs. Dean also said that she suffers from muscle pain due to her Fibromyalgia and that her right leg is shorter than her left – contributing to her hip pain.

Dean testified that she can sit for fifteen to twenty minutes at a time, walk for five minutes at a time, and lift no more than five pounds. In addition, Dean stated that she must lay down due to pain for two to four hours throughout an eight-hour day. Dean testified that she can no longer work in her garden or attend her children's sports practices. Although she attends about three of her children's games per season, she says that she must sit at the lower level of the stands so she can switch positions frequently.

Dean stated that her children do the majority of the housework and that she only prepares meals by microwave. Dean also testified that her oldest son and a friend go shopping on her behalf. Dean reported that she uses a TENS unit to help with her pain and that hot, humid, and wet weather worsen her pain.

2

## B. Medical Treatment History of Gracie Dalane Dean

The medical record indicates that Dr. David Hill and nurse Judith Keeton treated Dean from October 3, 2001, through June 19, 2007. Nurse Keeton examined Dean twenty-seven times during that period. During her examinations, and under the supervision of Dr. Hill, Nurse Keeton diagnosed Dean with chronic lower back pain, fibromyalgia, depression/anxiety, and TMJ syndrome.

On May 27, 2005, a CT scan of Dean's Lumbar spine revealed a midline posterior disc bulge/incomplete disc herniation at L5-S1. On June 24, 2005, MRIs of Dean's spine revealed mild degenerative disc disease at T7-8 and T8-9; and mild posterior bulging of the T7-8 Disc.

Jason Zimmer, Physical Therapist, treated Dean from June 15, 2005, through September 21, 2005, at Freeman Neosho Rehab Center. On August 19, 2005, Mr. Zimmer completed a Medical Source Statement - Physical (MSS) in which he opined that Dean could: lift and/or carry five pounds frequently and ten pounds occasionally; stand and/or walk for thirty minutes at a time and for two hours throughout an eight-hour workday; sit for fifteen minutes at a time and one hour throughout an eight-hour workday; and needed to lay down or recline every one to two hours for five to ten minutes at a time.

On February 22, 2006, Nurse Keeton completed and Dr. Hill endorsed a Medical Source Statement - Physical ("MSS") in which they opined that Dean could: lift and/or carry five pounds frequently and ten pounds occasionally; stand and/or walk for thirty minutes at a time and for two hours throughout an eight-hour workday; sit for fifteen

3

minutes at a time and one hour throughout an eight-hour workday; and must change positions every one to two hours for five to ten minutes at a time.

### C. Medical Examination History of Gracie Dalane Dean

In addition to her treating physicians, Dean was examined by Dr. Andrew, Dr. Abu-Libdeh, Dr. Komes, and Dr. Petersen.

On August 22, 2005, Dr. Christopher Andrew diagnosed Dean as suffering from "[c]hronic low back pain status post vehicle crash" and degenerative disc disease.

On October 18, 2005, Dr. Ali J. Abu-Libdeh, M.D., examined Dean, diagnosing her as having osteoarthritis of the cervical, dorsal, and lubosacral spine along with fibromyalgia.

On November 9, 2005, Dr. Komes performed a consultative examination of Dean. Dr. Komes concluded Dean had a normal physical examination. Based on his examination, Dr. Komes stated Dean's abilities would be limited only by her physical stature of standing five feet and one inch tall and weighing 109 pounds. He also stated there were no significant impairments that would prohibit sitting, standing, walking, lifting, carrying, handling, hearing, speaking, or traveling. Dr. Komes opined that Dean could lift and carry fifty pounds occasionally and stand or walk six hours in an eight-hour day.

On August 16, 2006, Dr. Horace Rex Petersen, D.O., examined Dean, diagnosing her as suffering from: chronic low back pain with a history of degenerative disc disease and questionable herniated disk at the L5-S1 level; myofascial pain syndrome, probably

4

fibromyalgia, multiple trigger points present; panic attacks with anxiety disorder; and functional short leg syndrome. Dr. Petersen prescribed Tranxene, Naprosyn, Topamax, Zoloft, Ultram, and a TENS unit to treat Dean's condition.

### C. Vocational Expert Testimony

The vocational expert, Cindy Younger (hereinafter "VE"), testified that Dean's past relevant work consisted of the following: real estate sales, which is classified as light, skilled work; library assistant, which is classified as light, unskilled work; supervisor, roofing business, which is classified as medium, skilled work; insurance billing, which is classified as sedentary, skilled work; and waitress, which is classified as light, semi-skilled work.

The ALJ's first hypothetical question asked the VE to assume an individual: aged thirty-six; with fourteen years of education and Dean's past relevant work experience; who would be limited to light work, with no unprotected heights, no balancing, no hazards, no ladders, ropes, or scaffolds; and who would be limited to only occasional postural positions. The VE testified that such an individual could perform Dean's past relevant work in insurance billing, as a library assistant, and as a waitress.

Dean's first hypothetical to the VE asked the VE to assume an individual the same age as Dean, with the same education and past relevant work experience; who would be limited to: sitting for fifteen to twenty minutes at a time, standing for fifteen to twenty minutes at a time, walking five minutes at a time, lifting no more then five pounds, and

5

who must lay down or recline for two to four hours throughout an eight-hour day due to pain. The VE testified that there would be no work for such an individual.

Dean's second hypothetical asked the VE to assume an individual with the following limitations: can lift/carry five pounds frequently, ten pounds occasionally; can stand and/or walk thirty minutes at a time, and for two hours out of an eight-hour day; can sit for fifteen minutes at a time, and for one hour out of an eight-hour day; has limited ability to push or pull, including hand and feet controls; can never kneel; can occasionally balance and handle. Dean drew these limitations from the MSSs of Mr. Zimmer and Nurse Keeton. The VE testified that there would be no work for such an individual.

**D.     The ALJ's Decision**

The ALJ found that Dean had not engaged in substantial gainful activity subsequent to May 27, 2005 – the amended alleged onset date of disability.

The ALJ found that the medical evidence established that Dean has mild degenerative disc disease of the cervical, thoracic, and lumbar spines without spinal stenosis or impingement of neural formina; a slight leg length discrepancy; fibromyalgia syndrome with associated pain and fatigue; brief episodes of vertigo (onset early 2007 and sometimes associated with or attributed to headaches or history of episodes of TMJ syndrome), improved with prescribed medication; and depression with anxiety-related features.

The ALJ found that the combination of these impairments imposes significant limitations upon Dean's ability to perform basic physical work-related activities and is

therefore "severe" within the meaning of the regulations. The ALJ found that Dean does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found that Dean retains the residual functional capacity to lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently. She can sit, stand, or walk each at least six hours total throughout the course of a normal eight-hour workday with normal breaks. She is precluded from jobs requiring climbing upon ladders, ropes, or scaffolding, or balancing, but she otherwise is capable of occasional performance of other basic postural work-related activities including climbing ramps and stairs, stooping, kneeling, crouching, and crawling. She retains no significant limitation of ability to utilize her bilateral extremities and hands to perform gross or fine motor movements or basic manipulative work-related activities including reaching, handling, fingering, or feeling within the above-cited weight limits. She retains no significant communicative or sensory limitation regarding her ability to see, hear, speak, taste or smell. She is precluded from jobs requiring exposure to unprotected heights or unprotected environmental hazards. She retains the ability to understand, remember, and carry out simple to complex job tasks or instructions; use judgement; interact appropriately with supervisors, coworkers, and usual work situations; and deal with changes in a normal work setting.

The ALJ found that Dean retains the capacity to perform the requirements of her past relevant work.

7

## II. Discussion

### A. Standard of Review

In reviewing a denial of disability benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. See *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." See *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### B. Summary of Argument

Dean argues that the ALJ erred in his residual functional capacity ("RFC") finding. Specifically, Dean argues that the ALJ erred in finding that the opinions of Jeff Zimmer (a physical therapist) and Judith Keeton (a nurse practitioner) were not from "acceptable sources" and that they were therefore not entitled to controlling weight.

Dean argues that the ALJ gave too much weight to the opinions of Dr. Komes – a consultative examiner and board-certified specialist of physical and rehabilitative medicine – in according "significant weight" to those opinions.

Dean also argues that the ALJ improperly assessed her credibility and posed an improper hypothetical to the VE.

### C. Medical Opinions

Generally, treating physicians' opinions are entitled to controlling weight. 20 C.F.R. § 416.927(d)(2). An ALJ may not disregard the opinions of treating physicians to rely on the medical opinions of consulting physicians, see *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) (internal quotations and citations omitted), except (1) where the consulting physicians' assessments are supported by better or more thorough medical evidence; and (2) where a treating physician issues inconsistent opinions that undermine the credibility of those opinions. *Id*.

When evaluating the relative weight of medical opinions the Court must consider several factors, including: (1) examining relationship; (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and (6) any factors the applicant or others bring to the ALJ's attention. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)) (internal quotations and punctuation omitted). The opinion of a treating medical source, if not a physician or other "acceptable medical source," should still be considered but those "other medical source" opinion are entitled to less weight than that of a treating physician. 20 C.F.R. §§ 404.1527, 416.927. *See also* SSR 06-03p; *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

Dean argues that the ALJ gave too little weight to the opinions of Judith Keeton, a nurse who treated Dean in conjunction with David Hill, D.O., and Jeff Zimmer, a treating physical therapist. Dean also complains that the opinion of Dr. Kome, the consulting physician, was given too much weight.. Dean's medical records provide little support for,

9

and frequently contradict, the conclusions of Mr. Zimmer and Ms. Keeton. It is well established that an ALJ may grant less weight to a treating physician's opinion if it conflicts with substantial medical evidence in the record. See, e.g., *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000). Contrary to the opinions of Mr. Zimmer and Ms. Keeton that Dean must lie down or recline for five to ten minutes one to two times per hour to relieve pain, Dean's treating rheumatologist prescribed regular exercise and physical therapy for treatment of her condition. Dean repeatedly admitted to treating physicians that physical therapy had helped alleviate her symptoms. And after personally examining Dean, examining physician, Dr. Komes, characterized Dean's examination as "normal," stating that she had no significant impairments that would prohibit sitting, standing, walking, lifting, carrying, handling, hearing, speaking, or traveling.

Although Mr. Zimmer and Ms. Keeton treated Dean, their evaluations are not consistent with their own treatment notes. Ms. Keeton's evaluation checklist is identical to the earlier evaluation by Mr. Zimmer, indicating that she merely recited Mr. Zimmer's findings and did not rely on medically acceptable diagnostic techniques. Mr. Zimmer and Ms. Keeton both marked boxes in their evaluations indicating their opinions that the claimant may "never" kneel, finger, see, utilize near and far visual acuity or depth perception, speak, and hear.[2] The ALJ noted that these answers are directly refuted by notes in Zimmer's own physical therapy notes, as well as numerous contemporary records of Dean's physical abilities.

---

[2]The Court has deferred to Dean's interpretation of those notes.

Dean does not seem to dispute these inconsistencies but, rather, argues that the checklists filled out by Mr. Zimmer and Ms. Keeton confused them. Dean argues that this "obvious confusion" required the ALJ to contact these sources for clarification. However, an ALJ is not required to recontact a physician whose opinion was inherently contradictory, especially if the ALJ can otherwise determine from the record whether the claimant is disabled. *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006) (citing *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004)). The weight of Dean's medical records sufficiently supported the ALJ's conclusion, making it unnecessary to contact Mr. Zimmer and Ms. Keeton.

Further considerations support the relative amount of weight the ALJ afforded to Mr. Zimmers and Ms. Keeton's medial opinion. The ALJ found that some opinions amounted to legal conclusions as to whether the claimant was "disabled" or "unable to work" – determinations assigned solely to the discretion of the Commissioner. *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996). Such statements simply "are not conclusive as to the ultimate question" of disability. *Id.* (quoting *Nelson v. Sullivan*, 946 F.2d 1314, 1316-17).

Furthermore, the ALJ noted that the opinions of Mr. Zimmer and Ms. Keeton are entitled to less weight based on their checklist format. That a treating physician's RFC assessment was in checklist format may limit its evidentiary value. *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001).

Dr. Komes examined Dean and, unlike Mr. Zimmer and Ms. Keeton, produced internally consistent and well-supported conclusions. The ALJ noted that the clinical findings of Dr. Komes's own physical examination of Dean supported his opinion, including findings of a normal gait, normal strength in the upper and lower extremities, no deficits in sensation, intact reflexes, no swelling of the joints, and the ability to stand on the toes and heels and squat without difficulty. The ALJ also stated that Dr. Komes's review of Dean's previous medical records – including objective diagnostic imaging studies, electromyography testing, and blood work – also supported the physician's opinion. The ALJ noted that Dr. Komes's opinion was consistent with Dean's demonstrated capacities reflected in physical therapy records.

That Dr. Komes is a board-certified specialist of physical and rehabilitative medicine – a specialty according him expertise in evaluating work-related limitations from physical impairments – further supports the weight given his opinion by the ALJ. Opinions of experts within their field of expertise are generally afforded more weight than the opinions of non-experts. 20 C.F.R. § 404.1527(d)(5); *Hensley v. Barnhart*, 352 F.3d 353, 356 (8th Cir. 2003). Mr. Zimmer and Ms. Keeton were not experts in their field, or even physicians, entitling the ALJ to shift more weight to Dr. Komes's conclusions.

Although the ALJ weighted the opinions of Dr. Komes more heavily than those of Mr. Zimmer and Ms. Keeton, he provided reasons for the weight attributed to both and appropriately weighed them against the entire body of available evidence. The

regulations specifically provide that an ALJ may consider the opinions of non-treating physicians. 20 C.F.R. §§ 404.1527(f), 416.927(f); *Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006). The ALJ also pointed out that he accorded Dean the benefit of significantly greater exertional limitations than those opined by Dr. Komes.

### D. Credibility Determination

Dean also seems to challenge the ALJ's credibility determination, arguing that the ALJ, contrary to Social Security regulations and Eighth Circuit caselaw, required Dean to produce objective evidence to corroborate her allegations of disabling pain. The federal regulations state that although an ALJ may not reject a claimant's subjective complaints based solely on the objective medical evidence, such evidence is a useful indicator in making conclusions about the effect of symptoms – such as pain – on the claimant's ability to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). An ALJ may discredit subjective complaints "if there are inconsistencies in the evidence as a whole." *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996).

The ALJ based this credibility determination on several factors, including: the lack of objective medical evidence to support the severity of symptoms alleged (including repeated physical examinations showing normal musculoskeletal and neurological findings); evidence that Dean's condition improved with treatment (including improvement with treatment of alleged headaches and vertigo – along with the repeated success of physical therapy – despite alleged disabling pain); Dean's inconsistent statements (including a prescription of exercise and therapy for fibromyalgia despite

13

Dean's allegations that this condition necessitated extensive rest); and evidence that Dean continued to work despite her allegedly disabling impairments (including repeated admissions on the record that she continued work as a real estate agent, even during periods where she alleged she had been unable to work). The foregoing demonstrates a sufficient basis for the ALJ to discredit Dean's subjective indications of disabling pain.

### E. Vocational Expert Hypothetical

Dean also argues that the ALJ erred in providing an improper hypothetical to the vocational expert ("VE"). A hypothetical should provide the VE with a description of all relevant impairments of the claimant. *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007) (citations omitted). Dean does not contest that the hypothetical accurately represents the ALJ's finding regarding Dean's residual functional capacity. Rather, Dean only extends her argument that the RFC itself is flawed. Because substantial evidence supported the ALJ's finding, the ALJ properly limited his hypothetical to impairments included in his RFC determination. *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir.1999) (citations omitted).

## III. Conclusion

Accordingly, it is hereby ORDERED that Dean's Petition [Docs. ## 4, 9] is DENIED.

s/ NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated: June 22, 2009  
Jefferson City, Missouri